## TURNER v. DURANT COTTON OIL CO. et al.

No. 14297—Opinion Filed July 31, 1923.

Rehearing Denied Nov. 6, 1923.

(Syllabus.)

1. **Trial — Demurrer to Evidence — Negligence—Action for Personal Injuries.**

A demurrer admits the truth of all the evidence introduced and of all the facts which it tends to establish, as well as every fair and reasonable inference, and should be overruled unless the evidence and all inference which a jury could reasonably draw from it are insufficient to support a verdict for plaintiff. But where the evidence in an action for personal injuries fails entirely to show primary negligence, the court should sustain the demurrer and instruct a verdict in favor of the defendant.

2. **Negligence — Children — Attractive Nuisance.**

Where it appears from the evidence defendant maintained a cotton seed house 18x 20 feet, constructed out of lumber, into which it conveyed cotton seed by means of a seed conveyor, which consisted of a screw, said screw being enclosed in a box except at intervals it was open at top and bottom to permit the seed to fall out as it was operated; that this conveyor entered the seed house ten feet from the ground near the top of the house; that the house had several windows about two feet square, none of which were nearer than five feet of the ground; that the plaintiff, a boy just past seven years of age, with a companion, went to the gin plant and was told to go home by

an employe of the defendant, and disappeared as if going to leave the premises, but subsequently, without knowledge of said employe, entered the seed house through the window at the north end by getting up on the sill of the house, which extended out from the wall of the house sufficient distance so as to be used as a step in entering the room at the window; that the plaintiff climbed upon the pile of cotton seed, which extended up to about two feet of the seed conveyor, and got on top of the conveyor to jump down on the seed, and in attempting to jump stepped into one of the openings in the box covering the screw while said conveyor was being operated and received injuries to his leg, the same being broken, and there was no evidence the employes of the defendant knew of the presence of the plaintiff in the seed house, held, the seed house was constructed in an ordinarily safe manner with the usual safeguards for such houses, and that it did not constitute an attractive nuisance and the trial court properly sustained a demurrer to plaintiff's evidence.

Error from District Court, Bryan County; Geo. S. March, Judge.

Action by Albert Turner, by his next friend, L. A. Turner, against the Durant Cotton Oil Company, a corporation, and another to recover damages for personal injuries. Judgment for defendants, and plaintiff affirms. Affirmed.

Hatchett & Semple and C. M. Casland, for plaintiff in error.

Hays & McIntosh, for defendants in error.

KENNAMER, J. The plaintiff instituted this action against the defendants in the district court of Bryan county to recover damages for personal injuries. In the trial of the cause, on the 22nd day of October, 1922, at the close of the testimony introduced by the plaintiff the court sustained the demurrer of the defendants to the plaintiff's evidence and instructed the jury to return a verdict for the defendants. To reverse the judgment this appeal is prosecuted.

The material facts, as established by the plaintiff's evidence, may be briefly stated as follows: On September 22, 1919, the defendant, Durant Cotton Oil Company, was operating a gin in the city of Atoka, and as part of the gin plant had a seed house about 18x20 feet. This seed house had no doors in it, but several windows, one being in the north end of the house. These windows were about five to nine feet from the ground. The house was an ordinary wooden frame seed house. The cotton seed from gin was run into this house by means of a seed conveyor, which consisted of a screw. The

screw was entirely enclosed until it came to the seed house, and holes were left in the bottom and top of the box used in enclosing the screw in order to let the seed out and distribute them over the seed house. The windows were kept open and had no shutters or glass for closing them. The seed conveyor entered the seed house 10 feet above the ground and ran through the house half way up the distance of the rafters to the house. Occasionally small children had played around the gin plant and had been seen by employes of the defendant.

On the date of the plaintiff's injury, in September, he was just past seven years of age. In the afternoon on said date plaintiff, in company with his cousin, another small boy, went to the gin and was seen by the uncle of the plaintiff and told to leave the premises. The two boys apparently disappeared, as if going away, but subseqquently climbed through the window by getting upon the sill of the seed house, which extended out from the wall. The plaintiff climbed upon the cotton seed, which was piled up in nearly two feet of seed conveyor, and got up on the conveyor to jump off on the cotton pile. In jumping the plaintiff got his left leg into the conveyor and received serious injuries. His leg was broken in two places.

Counsel for plaintiff contend: That the defendants were negligent in leaving the screw box uncovered and the screw exposed from the top; also in leaving the openings to the seed house open and unprotected so that small boys could easily climb in; that the seed house was a place attractive to small children and this plaintiff and other boys, being to the knowledge of the defendant, played around there before and in the vicinity on the occasion.

The only question for our determination is whether the court committed error in instructing a verdict for the defendants. It is admitted the defendant, Durant Cotton Oil Company, sold out after the injury to plaintiff to Choctaw Cotton Oil Company and stock was issued by Choctaw Cotton Oil Company to Durant Oil Company for the property or assets of the Durant Cotton Oil Company, and that if the first company is liable the latter would be. This court in numerous cases has held:

"A demurrer admits the truth of all the evidence introduced and of all the facts which it tends to establish, as well as every fair and reasonable inference, and should be overruled unless the evidence and all inference which a jury could reasonably draw from it are insufficient to support a verdict for plaintiff.

"But where the evidence fails entirely to show primary negligence, the court should sustain the demurrer and instruct a verdict in favor of the defendant."

Applying this rule to the evidence of the plaintiff in this case we are unable to find any evidence in the record which would have warranted the court in submitting the case to the jury. This court in the case of Faurot v. Oklahoma Wholesale Grocery Company. 21 Okla. 104, 95 Pac. 463, held:

"A person injured, although an infant, by falling down an elevator shaft in a wholesale grocery which was left unguarded, in order to recover must show the owner of the premises was under obligations to protect him from the injury; and the owner of such premises is liable for an injury occurring therein through his negligence only when the injured person comes upon them by invitation, express or implied, of the owner."

We believe the rule supported by the great weight of authority and sustained by reason and common sense is: That the owner of premises has the right to place on them such buildings and improvements as are necessary to carry on any legitimate business in which such owner is entitled to engage, and he is under no duty to exercise care to make them safe for the use of others, even children, coming thereon without invitation, authority, or allurement. Stamford Oil Mill Company v. Barnes (Tex.) 128 S. W. 375; Foster-Herbert Cut Stone Co. v. Pugh (Tenn.) 91 S. W. 199; Cooper v. Overton, 102 Tenn. 235, 62 S. W. 183; Mabel Gordon v. Snoqualmie Lumber & Shingle Company (Wash.) 109 Pac. 1044, 20 L. R. A. (N. S.) 88; Faris v. Hoberg, 134 Ind. 269; South Bend Iron Works v. Larger, 11 Ind. App. 367, 39 N. E. 209; Driscoll v. Clark (Mont.) 80 Pac. 373; Brown v. Rockwell City Canning Co. (Iowa) 110 N. W. 12; North Texas Const. Company v. Bostick (Tex.) 83 S. W. 12; Houck v. Chicago & A. Ry. Co. (Mo.) 92 S. W. 738; Isbell v. Hayward Lumber Co. (Tex. Civ. App.) 105 S. W. 211.

This sound principle of law rests upon the basis that the owner of property ordinarily has the right to make such use of his property as others throughout the country. Of course, this rule has no application where the owner has created an unusually dangerous condition readily accessible and attractive to children, or near the playgrounds or places where children frequently congregate to play.

A cotton gin is a common industrial plant situated in most every community in the cotton growing sections of this country. There was not any evidence tending to show that this gin and seed house was not operated in the ordinary and usual manner of such plants; in fact, the plaintiff had. to perform a very unusual act to subject himself to the danger which he encountered. It is not contended that any of the employes of the defendant had ever seen any boys inside the seed house. The seed conveyor was placed near the top of the seed house in an unusually safe place. It seems to us that the seed house was so constructed as to be ordinarily safe and no such condition existed as to excite the suspicion of an ordinarily prudent person that any danger was present or injury was likely to result to any one by reason of the manner in which the seed house was constructed.

It could hardly be said, under the circumstances, that the defendant might have foreseen that a seven year old boy would get away from home, from under the care of his parents, and secure a plank and climb through the window and up near the top of the seed house and come in contact with the seed conveyor. The Supreme Court of Washington, in the case of Gordon v. Snoqualmie Lumber Company, supra, approved the following pertinent language from the case of Ritz v. Wheeling, 45 W. Va. 270, 31 S. E. 994 (43 L. R. A. 148):

"Almost everything will attract some child. The pretty horse, or the bright red mowing machine, or the pond in the farmer's field, the millpond, canal, the railroad cars, the moving carriage in the street, electric works, and infinite other things, attract the child, as well as the city's reservoir. To what things is the rule to be limited? And where will not the curiosity, the thoughtlessness, and the agile feet of the truant boy carry him? He climbs into the high barn and the high cherry tree. Are they, too, to be watched and guarded against him? As was well said in Gillespie v. McGowan, 100 Pa. 144 (45 Am. Rep. 365), this rule 'would charge the duty of the protection of children upon every member of the community except their parents.' A very onerous duty!"

We have examined the authorities cited by plaintiff, and do not believe that they are in conflict with the views herein expressed. Therefore, the judgment is affirmed.

All the Justices concur.