Note.—See under (1) 4 C. J. p. 883 §2855; 2. R. C. L. p. 194; 1 R. C. L. Supp. p. 433: 4 R. C. L. Supp. 90; 5 R. C. L. Supp. p. 79 (2) 2 C. J. p. 493 §114; anno. 15 L. R. A. (N. S.) 693; 21 R. C. L. pp. 932 et seq.: 3 R. C. L. Supp. p. 1204; 4 R. C. L. Supp. p. 149; 5 R. C. L. Supp. p. 1179. (3) 8 C. J. p. 603 §840. (4) 27 Cyc. p. 1317.

---

## SHAFFER OIL & REF. CO. v. THOMAS.

No. 17436—Opinion Filed Nov. 23, 1926.

**1. Appeal and Error—Review—Necessity for Motion for New Trial—Overruling Demurrer and Pleading Further.**

The action of the trial court in overruling a demurrer to a petition, where the defendant has pleaded further, will not be reviewed by the court, unless it is presented to the trial court in a motion for a new trial.

**2. Pleading—Liberal Construction of Petition Demurred to as not Stating Facts Constituting Cause of Action.**

The rule is well settled that, on demurrer to a petition as defective, in that it does not state facts sufficient to constitute a cause of action, the petition must be liberally construed, and all its allegations, for the purposes of the demurrer, taken as true. And such demurrer can be sustained only where the petition presents defects so substantial and fatal as to authorize the court to say that, taking all the facts to be admitted, they furnish no cause of action whatever. If the facts stated in the petition entitled the plaintiff to any relief, a demurrer for want of sufficient facts should be overruled.

**3. Negligence—Care Required of Property Owners—Dangers to Children.**

As a general rule, every person is required to use such care in and about the keeping of his property as an ordinarily prudent person would have used under all the facts and circumstances of the case, but there is a difference in the degree of care that is required to be used in guarding against dangers where a child or immature person is concerned and in the case of a mature person.

**4. Same—Sufficiency of Instructions.**

The instructions given by the court examined, and held, to fairly cover the issues involved in the case.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Creek County; John L. Norman, Judge.

Action by Everett Thomas, a minor, by W. J. Thomas, his father and next friend, guardian, against the Shaffer Oil & Refining Company for personal injuries. Judgment was rendered for the plaintiff, and defendant brings error. Affirmed.

Ross & Thurman, for plaintiff in error.

Streeter Speakman, for defendant in error.

Opinion by PINKHAM, C. This action was instituted by the defendant in error, Everett Thomas, a minor, by W. J. Thomas, his father and next friend, guardian, against the plaintiff in error, the Shaffer Oil & Refining Company, a corporation, for alleged personal injuries received by defendant in error in Creek county, Okla., alleged by the defendant in error to have been directly and proximately caused by the negligence of plaintiff in error.

Plaintiff alleges in his petition, in substance, that on the 25th day of January, 1925, the defendant operated a certain gas pipe line in the course of its industry through which to convey natural gas, to which pipe line was attached a gasoline drip, and that there was an appliance provided by the defendant at said time and place for drawing the gasoline from the tank, which device is commonly called a "stop," and that it was defendant's duty to provide at said particular place some safety device whereby the said "stop" could be locked or securely fastened, but that defendant carelessly and negligently failed to do so, but provided a stop-cock valve without any lock or safety device which could be easily loosened, and thereupon the natural gas filling said gas line would force a spray of gasoline from said stopcock so removed a distance of several feet in the air and for a distance on all sides surrounding the same for six or eight feet; that by reason thereof the said device so used and provided by said defendant at said place was very attractive to children and did attract children to play at, near, and with the same, and that same was dangerous to the life and safety of such children for the reason that such gasoline was very inflammable;

that near said place was a path along which a number of children ordinarily traveled in going to and from the public school and to and from the town of Shamrock, and nearby was a playground frequented by the community children, and within almost 20 yards of said place in said pipe line there was a rope swing where the community children frequented, and on account of the close proximity of said gasoline drip to said path and said playground, children would frequently stop at said gasoline drip and play around and about the same, and cause the same to spray gas and gasoline upon each other; that said conditions had continued for more than a year prior to January 25, 1925, and were known to, or could have been known to defendant by the exercise of reasonable care and caution upon its part, but it continued to carelessly and negligently operate and maintain said gasoline drip under said conditions and circumstances; that on said 25th day of January. 1925, plaintiff and his 14-year old brother, Leonard Thomas, who lived near said town of Shamrock and had with other children frequently passed along said path running in close proximity to said gasoline drip, were attending the public school at Shamrock, and it was necessary for them to go home for their noon meal; that on their way home along said path they were attracted to said gasoline drip and stopped thereat to play; that they played thereat and in the vicinity thereof two or three hours, and having run through the spray of gas and gasoline emitted therefrom their clothes became saturated with gasoline; that without knowing or understanding the dangerous nature thereof and desiring to dry their clothing, they went a distance of some 30 or 40 feet north of said gasoline drip, gathered some leaves and sticks with which to build a fire in order to dry their clothes, and thereupon lit a match to start said fire, and thereupon their clothes became ignited and said Leonard Thomas was burned to death, and plaintiff's right arm was seriously burned to such an extent that he has permanently lost the use of his said right hand and arm; that by reason of said injury he has suffered great physical and mental pain and suffering and will continue so to do in the future. that the said injuries were directly and proximately caused by the careless and negligent acts and omissions of defendant in maintaining said gasoline drip in the condition and manner above set forth so as to constitute an attractive nuisance to plaintiff to play at and about and with the same, and the careless and negligent acts and omissions of the defendant in failing and refusing to provide locks or safety devices by means of which the emitting of gasoline spray from said gasoline drip could and would have been prevented; that plaintiff was without fault or negligence in the premises, all to his damage in the sum of $30,000, for which he prays judgment.

The defendant's general demurrer to plaintiff's petition was overruled and exception reserved. The defendant for its answer to plaintiff's petition denies each and every allegation therein contained, except admitting that it is a corporation doing business in the state of Oklahoma, and engaged in the production and refining of oil in Creek county.

For further answer and defense defendant says that the point on its pipe line, where the gasoline drip referred to in plaintiff's petition was attached, was located in a remote spot not near to where plaintiff or other children were in the habit of playing or had any occasion to play, and same was not near to any playground usually or commonly used by children nor close to a path frequently traveled by children or other people, and that said gasoline drip, pipe, and other appliances connected therewith were not sufficiently close to any point where children were in the habit of going to attract children's attention, and that same were entirely safe for the purpose for which they were installed and maintained, and that if plaintiff or others were in the habit of molesting or playing with said gasoline drip, defendant had no knowledge thereof; that defendant had no information to the effect that plaintiff or others even knew of the location of said gasoline drip, or the location of its pipe line, or that they would discover it in the usual course of their affairs; that plaintiff in tampering with said gasoline drip was doing so without defendant's knowledge or consent; that he was a pure volunteer; that he was a boy of at least ordinary intelligence for his age and must have known or did know that he was guilty of contributory negligence in bothering or playing with said gasoline drip and in permitting the escape of gas therefrom.

Plaintiff for reply to defendant's answer denies generally all of the allegations of new matter therein contained. The case was tried to a jury and at the close of plaintiff's evidence the defendant interposed its demurrer thereto, which was by the court overruled and exception saved. At the close of all the evidence the defendant moved the court to direct the jury to find for the defendant. This motion was overruled and exception

reserved. Thereafter the case was submitted to the jury under the court's instructions, and a verdict returned in favor of the plaintiff and against the defendant for the sum of $5,000. Defendant's motion for a new trial was overruled, exceptions saved, judgment was rendered in accordance with the jury's verdict, and from said judgment the defendant has duly appealed to this court by petition in error and case-made attached. For reversal of the judgment the defendant presents numerous assignments of error. The first proposition presented is that the court erred in overruling defendant's demurrer to plaintiff's petition. The record discloses that the defendant's demurrer to plaintiff's petition was overruled on June 1, 1925; exception was reserved and the defendant given 15 days to answer. The defendant's motion for new trial was presented upon the 21st day of January, 1926, and the appeal was filed in this court May 14, 1926.

It further appears that the defendant did not incorporate as error the overruling of the demurrer in its motion for new trial. In a number of decisions of this court it has been held that the action of the trial court in overruling a demurrer to a petition, where the defendant has pleaded further, will not be reviewed by the court, unless it is presented to the trial court in a motion for a new trial. Commercial Investment Trust v. Ferguson, 96 Okla. 163, 220 Pac. 925; Aultman & Taylor Machinery Co. v. Fuss, Adm'r, 86 Okla. 168, 207 Pac. 308; Roberts v. Sims, 111 Okla. 1, 237 Pac. 852. But aside from this, we are clearly of the opinion that plaintiff's petition stated a cause of action, and that the overruling of defendant's general demurrer thereto was not error.

The third assignment of error presented and discussed relates to the action of the court in overruling the motion for a directed verdict. Under this assignment it becomes necessary to briefly review the evidence adduced on the trial of the case.

There is no dispute as to the fact that near the place in the defendant's pipe line described in plaintiff's petition there was a path some three feet wide along which numbers of children traveled in going to and from a public school; that nearby said place in said pipe line there was a playground which was frequently visited by the children in that community; that on account of the close proximity to the playground the school children would frequently stop at the gasoline drip and play around and about the same, and cause the same to spray gas and gasoline upon each other, and that this condition had continued for more than a year prior to the time of the injury suffered by the plaintiff.

The plaintiff, a boy of some 11 years of age, and his brother, 14 years old, while on their way from school, stopped and played around this so-called drip, and while there opened the stop-cock or faucet, and became saturated with gasoline, and striking a match to build a fire to dry their clothing the plaintiff sustained the injury for which this action was brought. The evidence is conclusive upon the point with respect to the necessity of having a locking device on the outlet of the drip or faucet. The superintendent of the defendant company testified that 30 days prior to the accident there was a lock on the particular stop-cock or faucet, but that at the time of the injury complained of there was no lock there and that he did not know how long it had been in that condition.

It is borne out by the testimony of all the witnesses for the plaintiff and numerous school children who turned on this faucet, that it was a simple and easy matter to turn on the valve and knock out the plug. The evidence further shows that numerous small boys had on a number of occasions turned on the gasoline at this drip and played with it. This is conclusive upon the proposition that small boys could and did operate this device, and that it was not properly locked or safeguarded.

A number of experienced oil field workers testified to the effect that in the locality involved herein there were three kinds of locking devices in common use among oil companies, and that with such a locking device "it would take a mighty good sledge hammer to break it"; that without this locking device, in order to open the gasoline drip all that was necessary "was just to open the stop-cock." Practically all of the witnesses agreed that this gasoline drip was a dangerous instrument when permitted to remain without a locking device. That the defendant company was engaged in handling a dangerous agency cannot be disputed, and this fact must be borne in mind in distinguishing the various authorities cited in the brief of counsel for defendant.

"The courts have always made a difference in the application of rules guarding against dangers with mature persons and children: what would be ordinary care in the one case might be negligence in the other." New v. Stout, 98 Okla. 177, 224 Pac. 519.

In the case of Town of Depew v. Kilgore et al., 117 Okla. 263, 246 Pac. 606, it is

said in the second paragraph of the syllabus:

"As a general rule, every person is required to use such care in and about the keeping of his property as an ordinarily prudent person would have used under all the facts and circumstances of the case, but there is a difference in the degree of care that is required to be used in guarding against dangers where a child or immature person is concerned and in the case of a mature person."

It is the theory of the defendant that the plaintiff, a boy 11 years of age, was a trespasser upon the company's property, and that it only owed him the duty not to injure him intentionally or wantonly, and the cases of City of Shawnee v. Cheek, 41 Okla. 227, 137 Pac. 724; City of Grandfield v. Hammonds, 100 Okla. 75, 227 Pac. 140; and Turner v. Durant Cotton Oil Co., 96 Okla. 31, 219 Pac. 892, are cited in support of the proposition.

These cases are clearly distinguishable from the instant case. In the Turner Case, supra, the boy was injured while playing in a cotton seed house. In the opinion, after stating that the owner of the premises has the right to place on them such buildings and improvements as are necessary to carry on any legitimate business in which such owner is entitled to engage, and he is under no duty to exercise care to make them safe for the use of others, even children coming thereon without invitation, authority, or allurement, the opinion continues as follows:

"This sound principle of law rests upon the basis that the owner of property ordinarily has the right to make such use of his property as others throughout the county. Of course, this rule has no application where the owner has created an unusually dangerous condition readily accessible and attractive to children, or near the playgrounds or places where children frequently congregate to play."

In the instant case the proof shows that this instrumentality owned and operated by the defendant company was not equipped in a safe manner, and that the usual safeguard, to wit, a locking device, was entirely omitted; and constituted an attractive nuisance.

In the case of City of Grandfield v. Hammonds, supra, cited by defendant, it is held that under the facts of that case the attractive nuisance doctrine had no application. In the cited case a child was drowned in a well located on the city's property which was in the process of repair. The well in that case was located on the city's premises at a distance from any public road, not even a path leading to it from the road.

In the case of City of Shawnee v. Cheek,

supra, cited by defendant, the second paragraph of the syllabus is as follows:

"A mere omission, although superficially characterized by mere thoughtlessness or heedlessness, but, in its deeper explanation, involving a reckless disregard for the safety of merely technical and reasonably anticipated trespassers, such as children of tender years, especially if unconscious trespassers, in respect to obviously and seriously dangerous artificial condition of premises, may amount to wantonness in a landowner; but the attractiveness and accessibility of the place or thing involving such danger and the probability of such trespassers. the gravity of the danger in such condition, the length of time such condition has existed, the smallness of cost and of deprivation of beneficial use involved in eliminating same, and the reasonableness of the inference that the landowner, as a person of ordinary sensibilities and prudence, knew or should have known of, and under all the facts and circumstances in the case should have eliminated such danger, are proper considerations in determining whether there was such reckless disregard for the safety of such trespassers."

In view of the facts disclosed by the record in the instant case, it may be fairly said that if cautionary measures of a reasonable character had been taken by the defendant company, such as having the drip or faucet locked, as appears to be the custom and practice observed in the oil and gas fields of this state for the purpose of preventing children or other persons from extracting the gas and gasoline from the exposed pipe line, the injury involved in this case would have been prevented.

In 20 R. C. L. 84, it is said:

"The character of the instrumentality by which the injury complained of was received is of great importance in determining liability in this class of cases. Not only does the nature of the place or appliance bear upon the issue of knowledge and appreciation of the peril of the child, but it often tends to establish knowledge on the part of the defendant that the child was in peril thereby. for no doubt the ownership of certain instrumentalities may properly be held to charge the owner with knowledge that children generally will yield to their attractions."

In the case of Powers v. Harlow, 53 Mich. 507, 19 N. W. 257, Judge Cooley in the opinion observed:

"Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them must calculate upon this, and take precautions accordingly. If they leave exposed to the observation of children anything which

would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken."

This language is peculiarly applicable to the facts of the instant case.

It is further contended that that part of instruction No. 10 given by the court containing the following language was erroneous, to wit: "* * * and that it owed to the plaintiff only a duty not to injure him intentionally or wantonly."

The above language taken in connection with the words preceding and following the language of the instruction quoted, clearly shows, we think, that the instruction as a whole contained no error of which the defendant could complain. It is said in the instruction complained of:

"And in determining whether defendant's conduct in the maintenance of said gasoline drip on its said pipe line in the condition and manner in which it was obtained, as disclosed by the evidence in this case, was intentional or wanton as to possible injury of the plaintiff, you will take into consideration the attractiveness and accessibility, or the lack of attractiveness and accessibility, of said gasoline drip. the gravity of the danger, if any, the length of time such condition has existed. whether the defendant knew or could have known by the exercise of ordinary care and prudence of. the existence of such danger, if any, the smal'ness of the cost and deprivation of beneficial use of said gasoline drip to the defendant in eliminating such danger, if any, and whether or not the defendant could reasonably have eliminated and provided against such danger, if any, and all of the facts and circumstances in evidence before you."

The last assignment of error presented is that the verdict of the jury was excessive and appears to have been rendered under influence of passion and prejudice.

The testimony shows that the plaintiff's hand was badly scarred; that it is disabled and the leaders and ligaments drawn. The physician who attended him on some 14 occasions testified that "his grip is not as good after a burn of that kind; I don't think it would be as good as in the other hand," and this is aside from the extreme pain he has suffered by reason of the injury.

In the case of Chicago, R. I. & P. Ry. Co. v. De Vore, 43 Okla. 534, 143 Pac. 864, this court quotes with approval the rule laid down by Chancellor Kent in the case of Coleman v. Southwick, 9 John. (N. Y.) 45, 6 Am. Dec. 253, as follows:

"The damages, therefore, must be so excessive as to strike mankind, at first blush. as being, beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess."

It appears that this question of the amount of the verdict was brought to the attention of the trial court on the motion for a new trial, and after a consideration of this question, among others presented by the said motion, the same was overruled and the verdict approved.

There is no evidence in this case that the jury was actuated by passion or prejudice in the rendering of the judgment.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 3 C. J. p. 973, §§870, 874; 2 R. C. L. pp. 98 et seq. (2) 31 Cyc. pp. 79, 290. 333; 21 R. C. L. pp. 506-510; 3 R. C. L. Supp. p. 1163; 4 R. C. L. Supp. p. 1418; 5 R. C. L. Supp. p. 1162; 6 R. C. L. Supp. p. 1271. (3) 29 Cyc. pp. 429, 465; 20 R. C. L. pp. 84, et seq. (4) 29 Cyc. p. 647 (Anno). .