## PHILLIPS PETROLEUM CO. v. MATTHESEN et ux.

No. 25055.    April 16, 1935

R. H. Hudson, H. K. Hudson, R. E. Boggess, and R. B. F. Hummer, for plaintiff in error.

Dudley, Hyde, Duvall & Dudley, for defendants in error.

PER CURIAM. For convenience the parties will be referred to as they appeared in the trial court.

This action was instituted by plaintiffs George Matthesen and Carrie Matthesen, his wife, against the defendant, Phillips Petroleum Company, a corporation, to recover damages for the wrongful death of their son Byron Matthesen, a boy about five years of age, alleged to have been caused by the negligence of the defendant.

Plaintiffs alleged in their amended petition that on May 18, 1931, they resided on the south side of High street; that defendant was laying a pipe line in front of plaintiffs' house; that defendant had unloaded and stacked a large amount of iron pipe in front of plaintiffs' house on sloping ground adjacent to the ditch where the pipe was to be buried; that the pipe was attractive to children, and that children in the neighborhood were playing on said pipe; that the defendant negligently stacked the pipe on ground sloping toward the ditch, and failed to block or otherwise anchor the same; that the deceased son of plaintiffs, while on the pipe, was rolled into the ditch, and the defendant's pipe rolled in upon him, injuring him to the extent that he died the next day. Plaintiffs alleged that the boy was about five years old, strong, healthy, etc., and that plaintiffs suffered loss by his death in the sum prayed for. The defendant's general demurrer to the plaintiffs' amended petition was overruled, and exception reserved. The defendant thereupon answered by a general denial, and pleaded contributory negligence on the part of the parents, for failing to guard the child and remove him from the proximity of defendant's operations. Plaintiffs replied by a general denial. The case was tried to a jury, and at the close of the plaintiffs' evidence, defendant interposed its demurrer thereto, which was by the court overruled, and exceptions saved.

At the close of all the evidence the defendant moved for a directed verdict. This motion was overruled, and exception saved.

Thereafter the case was submitted to the jury under the court's instructions and a verdict returned in favor of plaintiffs and against the defendant for the sum of $1,650.

Defendant's motion for a new trial was overruled, exceptions saved, judgment was rendered in accordance with the verdict of the jury, and from said judgment defendant appealed to this court by petition in error and case-made attached.

For reversal of the judgment, the defendant presents numerous assignments of error.

The first proposition presented is that the court erred in overruling the defendant's demurrer to plaintiffs' amended petition.

The rule is well settled that on a demurrer to a petition as defective in that it does not state facts sufficient to constitute a cause of action, the petition must be liberally construed, and all its allegations, for the purposes of the demurrer, taken as true, and such demurrer can be sustained only where the petition presents defects so

substantial and fatal as to authorize the courts to say that, taking all the facts to be admitted, they furnish no cause of action whatever. If the facts stated in the petition entitle the plaintiffs to any relief, a demurrer for want of sufficient facts should be overruled. Shaffer Oil & Refining Co. v. Thomas, 120 Okla. 253, 252 P. 41.

The record discloses that defendant's demurrer to plaintiffs' amended petition was overruled February 13, 1932, and the defendant given 15 days to answer.

The defendant's motion for new trial was presented on the 7th day of April, 1933, and the appeal was filed in this court October 2, 1933. It further appears that the defendant did not incorporate as error the overruling of the demurrer to the amended petition in its motion for a new trial. Counsel for plaintiffs do not raise the point in their brief, but in a number of decisions of this court, it has been held that when a defendant desires to present to this court as error the overruling of a demurrer to the petition, it may be presented by two methods:

(a) By saving the proper exception and having the appeal lodged in this court within six months of the date of the order.

(b) By saving the proper exception and incorporating the order of the trial court in overruling the demurrer as one of the grounds of the motion for a new trial, and perfecting the appeal in this court within six months from the date of the overruling of the motion for a new trial. Aultman & Taylor Machinery Co. v. Fuss, 86 Okla. 168, 207 P. 308; Empire Gas & Fuel Co. v. Powell, 150 Okla. 39, 300 P. 788.

But aside from this, we are of the opinion that, although the amended petition might have been subject to challenge by proper motion, it was sufficient as against a general demurrer.

Defendant's third and seventh assignments of error are treated together in its brief, and they will be considered together here. Defendant says the court erred in overruling the demurrer of the defendant to the evidence of the plaintiff, and in refusing to direct a verdict for the defendant. These assignments go into the sufficiency of the evidence, and a consideration of the same requires an examination of all the evidence. In this we are required to view the evidence in the most favorable light towards plaintiffs' case.

As to the following facts, the evidence of both plaintiffs and defendant is in reasonable accord:

The defendant was rightfully in the street laying its pipe line. On the morning of May 18, 1931, about 9 a. m. defendant's pipe line gang, consisting of 30 or 40 men, strung their eight-inch iron pipe along the street in front of plaintiffs' house. The pipe was rolled close to the fence on the east side of the street. The joints of pipe were about 20 feet long and weighed about 24 pounds to the foot, or about 480 pounds to the joint. The joints of pipe were dropped approximately end to end, except at one place where there was a culvert on the driveway leading to plaintiffs' house. Here were placed two joints, to avoid blocking the driveway. The first joint was close to the fence on the east side of the highway, and the second joint was immediately west of the first joint. It was about four feet from the fence where the two joints lay to the ditch where they were to be placed. The ditch was about two and one-half feet deep, and the ground on which the two joints were resting sloped from the fence down to the top of the ditch at an angle of about 25 degrees. One of defendant's men was working under the end of the culvert about 3:30 p. m. of the same day, May 18th, when the deceased, with his sister, about six years old, went on the culvert and stood looking down on defendant's workman, who said to the boy: "Get back—don't get up here close. I seen a snake under this bridge awhile ago". (Prior to this time, the workmen had seen the child playing in the yard.) The boy thereupon left the culvert and climbed on the joint of pipe nearest the ditch, being the front pipe of the two joints near the culvert. The front pipe rolled into the ditch, with the boy on top of it, and the second pipe followed immediately behind and rolled into the ditch on top of the child, causing the injury from which he died. The evidence shows that other small children, possibly five or six, played on and about the pipe earlier in the day.

The evidence is conflicting as to whether the pipe was blocked to keep it from rolling. Plaintiffs' witnesses saw no blocks. Several of defendant's witnesses insisted that the two joints were scotched in three places by pieces of wood, possibly 2 x 4's. Certain it is that the pipe stayed in position for several hours (during which time they had been swabbed by defendant's workmen), and until the child climbed upon it, and it is equally certain that when the

544

child climbed on the front joint, it, the child, and the back joint all rolled into the ditch.

The defendant in its brief insists that the plaintiffs' petition was founded and the case submitted to the jury on the doctrine of "attractive nuisance"; that this court has limited its application to open and dangerous machinery and appliances alluring and attractive to children of immature judgment, and that these joints of pipe were not dangerous, and were not unusually attractive to immature children.

In support of its position, defendant cites Lone Star Gas Co. v. Parsons, 159 Okla. 52, 14 P. (2d.) 369. In this case the court held defendant to a high degree of care to prevent dynamite cartridges coming into the possession of small children. It reasserted the fact that the "attractive nuisance" doctrine is recognized in this jurisdiction, and held as a matter of law that defendant's negligence was the proximate cause of the injury.

Turner v. Durant Cotton Oil Co. et al., 96 Okla. 31, 219 P. 892, cited by defendant, was a case where a small child climbed up five feet into the seed house of a cotton gin, and was injured on a conveyor therein. The court sustained a demurrer to plaintiff's evidence, holding as a matter of law that the seed house was constructed in an ordinarily safe manner, and that it did not constitute an "attractive nuisance".

In considering the instant case, it should be kept in mind that the defendant's pipe was located in the public street, and that the plaintiffs' child was not a trespasser in the street.

Defendant next directs our attention to the case of O'Hare v. Laclede Gas Light Co., decided by the Supreme Court of Missouri, 244 Mo. 395, 148 S. W. 884. This cause is almost on all fours with the case at bar, except that the pipe was placed on sloping ground with a fall of 1½ feet to 20 feet, whereas, in the instant case, the slope was 25 degrees, and in the O'Hare Case each piece of pipe weighed 2,400 pounds, whereas in the case at bar each piece weighed about 480 pounds. After pointing out the lack of uniformity in the holdings of the courts of the several states in those cases based on the doctrine of "attractive nuisances", the Missouri court said:

"As above indicated, our court has followed the middle ground, and has been exceedingly slow to enlarge the field of the 'Turntable doctrine'."

Quoting further from the opinion:

"There was nothing about these pipes in the street so attractive to children or so dangerous to them, if attracted, as to impose on defendant the duty of taking precautions with special reference to accidents to children. Children will romp occasionally about any appliance, tool or device they have access to, but only those which are apt to entice them into danger impose on the owner the duty of guarding against their intrusion. In fact, the turntable cases are anomalous, and it is the practice of the courts to carry their doctrine no further than the previous decisions compel."

Defendant in its brief, after quoting from the Missouri case, says:

"We think the opinion in the O'Hare Case, supra, by the Supreme Court of our neighbor state, Missouri, is controlling."

The O'Hare Case is not controlling on this court, where a more liberal view is taken in "attractive nuisance" cases. We will not review here the several lines of authority on this subject. The cases have been annotated in 36 A. L. R. pages 34 to 294, inclusive, and in 45 A. L. R. 982.

Among the earlier cases in this jurisdiction is City of Shawnee v. Cheek, 41 Okla. 227, 137 P. 724, 51 L. R. A. (N.S.) 672, Ann. Cases 1915C, 290. The rule is announced in the second syllabus to be:

"A mere omission, although superficially characterized by mere thoughtlessness or heedlessness, but, in its deeper explanation, involving a reckless disregard for the safety of merely technical and reasonably anticipated trespassers, such as children of tender years, especially if unconscious trespassers in respect to obviously and seriously dangerous artificial condition of premises, may amount to wantonness in a landowner."

The third syllabus is as follows:

"A child under 7 years of age, or, in the absence of evidence of capacity, between 7 and 14 years of age, is presumed to be incapable of guilt of more than technical trespass, as affecting question of duty of owner in respect to dangerous condition of premises, and the character of the trespass may be a circumstance to be considered by the jury in ascertaining whether there is contributory negligence." Shaffer Oil & Refining Co. v. Thomas, 120 Okla. 253, 252 P. 41; C., R. I & P. Ry. Co. v. Wright, 62 Okla. 134, 161 P. 1070.

In an action for damages for personal injury charged to have been caused by negligence, the court should not sustain a demurrer to the evidence and withdraw the case from the jury, unless, as a matter of

law, no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish.

Where a child five years old was injured by heavy eight-inch iron pipe placed in the public street on ground with a slope of 25 degrees toward a ditch 2½ feet deep, at a place where children had, within the knowledge of defendant's workmen, been playing during the day, whether the iron pipe was blocked. or. if it was blocked, whether it was properly blocked, under all the circumstances, whether it was attractive to allure children into danger, whether it was dangerous, or whether it was left in a dangerous condition, whether the situation was such as to suggest to the defendant company the probability of accident, and whether the defendant company was negligent, presents questions of fact for the jury. Littlejohn v. Midland Valley R. Co., 47 Okla. 204, 148 P. 120; City of Altus et al. v. Milliken et al., 98 Okla. 1, 223 P. 851.

Defendant's final assignment of error complains of the court's instructions to the jury, and particularly of the failure to define "proximate cause". The defendant did not request an instruction defining "proximate cause", and did not assign the failure to give such instruction as a ground for a new trial. The question of whether defendant's negligence was the proximate cause of the injury was submitted to the jury in instruction No. 7. While it is proper for the court to define "proximate cause", the failure to do so, in the absence of a request for such instruction, does not constitute reversible error. The jury found the defendant guilty of negligence in the placing of its pipe along the street in the manner in which it was placed. This negligence was the proximate cause of the injury.

We have carefully examined the entire record, including the four instructions of which defendant complains. There is no material conflict in these instructions, and instruction designated "B" in defendant's brief is more favorable to defendant than the law of this jurisdiction permits. A child under seven years of age is not a trespasser, and cannot be guilty of contributory negligence. We conclude that the verdict of the jury was a just and proper one. First National Bank v. Cox, 83 Okla. 1, 200 P. 238. Judgment affirmed.

The Supreme Court acknowledges the aid of Attorneys Chas. A. Steele, Grover C. Spillers, and W. A. Chase in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Steele and approved by Mr. Spillers and Mr. Chase, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.