### SINCLAIR TEXAS PIPE LINE CO. et al. v. ROSS.

No. 23529.   Dec. 17, 1935.

Rehearing Denied Jan. 7, 1936.

Application for Leave to File Second Petition for Rehearing Denied Feb. 11, 1936.

Edward H. Chandler, Ralph W. Garrett, J. S. Ross, S. J. Clay, and Jas. H. Ross, for plaintiffs in error.

J. M. Springer, Fred A. Speakman, and Streeter Speakman, for defendant in error.

OSBORN, V. C. J. This action was instituted in the district court of Payne county by H. E. Ross, hereinafter referred to as plaintiff, against the Sinclair Texas Pipe Line Company, a corporation, Meador & Whitaker, a copartnership, and Ed Wheeler, hereinafter referred to as defendants, wherein plaintiff sought to recover damages for personal injuries. Issues were joined and the cause was tried to a jury and a verdict was rendered for plaintiff. From a judgment thereon defendants have appealed.

The record shows that a demurrer to the evidence in behalf of defendant Ed. Wheeler was sustained by the trial court. It further appears that while the matter was pending in this court the defendant Hudson Meador died and the cause was revived in the name of O. C. Whitaker, his surviving partner.

The injuries suffered by plaintiff for which he seeks recovery in this action were sustained by him on December 8, 1930, while he and several neighbors were hunting upon a farm owned by Sam Patterson and Grace Patterson six miles north of Yale. Plaintiff fell into an excavation or pit which had been dug on said premises by defendants, who were constructing a pipe line across said premises.

The farm in question was situated adjacent to the Cimarron river and was bounded by said river on the south and west. The owners of said farm on September 24, 1930, sold to the Sinclair Company a pipe line right of way through their farm. The Sinclair Company engaged defendants Meador & Whitaker to construct the pipe line, and the construction was begun about the time the right-of-way contract was signed. The pipe line was what is known as a welded line, and it is shown that in order properly to weld the joints of pipe it is necessary at certain intervals to dig an excavation known as a "bell hole", said excavation being larger and deeper than the ditch in order to allow the welder to weld the joints of pipe from underneath. The particular bell hole in question in this case was approximately six feet across and five feet deep.

As before stated, the Patterson farm was bounded on the south and west by the Cimarron river. There was no bridge across the river in the immediate vicinity, but to the west of said farm there was a ford across the river, and the evidence shows that for many years there had existed a road across the Patterson farm which was used by the public to reach the ford. It is further shown that when the servants and employees of defendants commenced the construction of the pipe line in the hauling of materials to the right of way they made a new road from the Patterson home across the farm to the ford across the river, and from that date the public used the new road so made by the employees of defendants and at all times had access thereto. There was a section line road which ran east of the Patterson farm, but extended no further for the reason that there was no bridge across the river. The new road established by the employees of defendants took a diagonal course across said farm in a general southwesterly direction. The pipe line right of way of defendants extended approximately north and south across said farm. On the date of the injury the construction of the line had been completed and the pipe line ditch partially filled. At a point approximately six feet north of the road at the point where it intersected the pipe line ditch there had been excavated a bell hole. On the date of the injury this hole had not been filled, but remained open.

On the night of December 8, 1930, plaintiff, with several neighbors, went hunting on the Patterson farm. They entered the farm from the east. At this point we insert certain testimony of plaintiff as follows:

"Q. Do you know of a road or path leading from south of Mr. Patterson's home

through the field? A. I knew of one going from the home down through the south field. Q. Can you recognize this map here as containing that? A. (Points to a line) Q. That represents the road? A. Yes, sir. Q. Show about where you entered this farm that night, considering this whole plat as the 40 acres of the Sam Patterson farm? A. Just about there. Q. I will put an X there. Now, describe the path that you and Elmer Patterson followed after you got onto this place. A. In entering the place at this place, then we went in a northwest direction, making for this road right here. Q. Where did you enter the road? A. Intersecting the roadway about there. Q. Well. I will put an X there. Then what was the line of your travel? A. Down that road."

On cross-examination he testified as follows (C. M. 142):

"Q. Then you didn't follow the road in going toward the dogs? A. Yes, sir. Q. But when you heard the dogs you were not on the road? A. No, sir, not when I first heard them, but I got on it immediately. Q. Then up to that time you had been walking around over the field generally? A. No, sir. Q. You hadn't been following any path? A. Had been following this path when I intersected it. Q. But you didn't intersect this path until after you heard the dogs bark, did you? A. Well, practically at the same time."

Again (C. M. 143):

"A. No, sir, we heard the sound right up there, and we went right up that road, as near as we could in the dark, towards them. Q. It was a very dark night? A. Yes, sir."

It is further shown that while running up the road plaintiff fell into the bell hole, striking on his neck and shoulders and thereby sustained serious injuries which resulted in permanent disability.

The theory upon which plaintiff sought to recover is stated in his petition and was submitted to the jury under the instructions of the court. The rule of law which plaintiff contends is applicable is stated in the case of St. Louis & S. F. Ry. Co. v. Ray, 65 Okla. 214, 165 P. 129, L. R A. 1918A, 843 as follows:

"Where a cause of danger to public travel exists on private land adjoining a public highway, the liability of the owner of the land for the injury from it depends on its dangerous character with reference to public travel, rather than to its exact location. The question whether it endangers public travel is as a general rule one of fact and not of law."

See, also, Connally v. Woods, 39 Okla. 186, 134 P. 869. The general rule of law stated in these authorities is generally recognized in all jurisdictions. See annotation and authorities 14 A. L. R. 1397. The right of defendants to make the excavation was undeniable, but said defendants were bound to exercise that right with due regard to the right of the public to use the road. Connally v. Woods, supra. Plaintiff contends herein that the servants and agents of the defendants knew that the roadway was open and accessible to the public and in leaving the bell hole open and unfilled and by failure to erect barriers or lights that would give warning to the public they were guilty of actionable negligence as against one who was rightfully using said roadway and at the time was exercising ordinary care and who was injured thereby. In line with the above authorities and the evidence in this case the dangerous character of the excavation was a question of fact for the determination of the jury in the light of the surrounding facts and circumstances, and it was the duty of the jury to determine whether or not under such circumstances the defendants through their agents and employees failed to exercise ordinary care in leaving the excavation unfilled or in failing to erect barriers or warning lights, and whether or not said failure to exercise ordinary care was the proximate cause of plaintiff's injuries. In view of the pleadings and evidence it was also incumbent upon the jury to determine whether or not plaintiff was guilty of contributory negligence. These issues were duly submitted to the jury and determined against defendants, and their determination thereof is binding on this court.

Defendants also complain of the instructions of the court as follows:

"The instructions of the court were mere abstract statements of rules of law without any concrete application to the facts disclosed by the evidence, and gave the jury no standard by which to determine the duty of plaintiffs in error or either of them in the premises, but, on the contrary, left it to the jury to say as a matter of law what the duties of the respective parties were and then to find under the evidence as a question of fact whether that duty had been performed."

We have examined the instructions, and it appears that the court instructed the jury at length as to the issues arising under the pleadings and evidence. The court fully defined negligence, contributory negligence, and proximate cause, and instructed the jury that in order to justify a recovery for plaintiff it must find that defendants were guilty of

negligence and that such negligence was the proximate cause of plaintiff's injury and that plaintiff was not guilty of contributory negligence. It is noted that the controversial issues involved herein are fully covered by these general instructions. Under the evidence in this case special instructions would have been of material assistance to the jury in determining the issues. Defendants submitted requested instructions, but these were likewise general instructions. Defendants did not prepare special instructions in writing, number and sign the same, and deliver them to the court as required by section 359, O. S. 1931, and therefore we may not reverse this cause on this assignment of error, since the controversial issues are fully covered by the general instructions of the court. Oklahoma Ry. Co. v. Boyd, 167 Okla. 151, 28 P. (2d) 537; Thompson v. Burnett, 167 Okla. 62, 27 P. (2d) 1053.

It is next contended that even if defendants were guilty of negligence, said negligence was not the proximate cause of the accident This contention is based upon a misconception of the facts. It is argued that plaintiff was hunting in the open field; that he heard the dogs barking; that he started running toward the place where the dogs were barking. But the evidence is unmistakable that he was attempting to follow the road. It is admitted by plaintiff that if he had been running through the field with no thought except to reach the point where the dogs were barking he would have no cause of action, but since he was following a public road and since the excavation was in close proximity to said road, the negligence of defendants became the proximate cause of his injury. It was upon this theory that the matter was submitted to the jury, and the verdict constitutes a finding that plaintiff was attempting to use the road at the time of his injury. Therefore, this contention is without merit.

The defendant Sinclair Texas Pipe Line Company contends that its separate demurrer to the evidence should have been sustained because the proof shows that Meador & Whitaker were independent contractors. In this connection the record shows that a written contract was entered into between the parties for the construction of the pipe line by Meador & Whitaker. The evidence further shows, however, that certain employees of the Sinclair Company were present during the construction of the line for the purpose of inspecting and supervising said construction with authority to see that the line was constructed according to the specifications of the contract. The court instructed the jury that in order to justify a recovery against either of the defendants it was necessary to find that the agents and employees of such defendant company were guilty of negligence. The verdict of the jury against the Sinclair Company constitutes a finding that the agents and employees of said company who were charged with the responsibility of supervising and directing the construction of the line were guilty of acts of negligence, and there is sufficient evidence to support such finding.

There is considerable argument in the briefs as to whether or not plaintiff was an invitee upon the premises at the time of the injury, as the guest of Elmer Patterson, lessee of the premises. It is not necessary to pass upon this point, for the reason that plaintiff's recovery in this case may be sustained only upon the theory that he was traveling along a thoroughfare permissively used by the public at the time of the injury, and his rights are determinable solely upon the theory that he, in common with other members of the public, had an implied invitation to use said roadway.

Other contentions of law and fact are presented in the briefs. These have been examined and are without substantial merit.

The judgment of the trial court is affirmed.

McNEILL, C. J., and RILEY, BAYLESS, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur.